410          COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Lovell vs. Chilton, et al.          1868.

# Wheeling.

Absent, HARRISON, J.*

FAYETTE A. LOVELL vs. WILLIAM E. CHILTON, et al.

## January Term, 1868.

1. C. sells and conveys several adjoining tracts of land to L. without having them surveyed. C.'s deeds for the lands call for about 500 acres, and he conveys to L. the same tracts of land for 500 acres more or less; but before the execution of the deed by C. to L., C. informed L. that he had never had the lands surveyed, and that he was disposed to believe there was not more than 450 acres embraced within the several tracts, although his deeds called for more land. L. replied that as he made by his calculations about 500 acres called for by the several deeds, to put it at that amount, that the difference was of no consequence, and should cause no difference between himself and C. Upon survey subsequently made the several tracts contained but 453 acres. HELD:

> That this was no such misrepresentation in the quantity of land as would entitle L. to a rescission of the contract.

2. Where a vendee of land obtains an injunction to stay the sale thereof under a deed of trust securing a residue of unpaid purchase money thereon, and at the date of the deed therefor to the vendee the vendor's title to a portion of the land is defective, and the vendor after the injunction is granted procures a deed of release from a third party for such portion, an order granting the injunction is proper until the title is settled, but the procuring and having recorded a deed of release by the vendor is a sufficient settlement of the title to allow the vendor to proceed to collect the unpaid purchase money by a sale of the land, and an order dissolving the injunction after such release is right, but upon further proceedings in the court below the vendee ought to recover his costs there.

On the 14th day of May, 1866, *Fayette A. Lovell* filed his bill in equity in the clerk's office of the circuit court of *Kanawha* county against *William H. Edwards, William E. Chilton, Anthony Gilkinson, John C. Bird, Joseph Musgrave* and *William E. G. Gillison*, trustee, in which it is alleged, that the complainant in January, 1865, purchased of the de-

*Absent from illness.

fendant, *Chilton,* several tracts of land adjoining each other in the county of *Kanawha* for the sum of 18,000 dollars, for which the said *Chilton* and wife on the 31st day of January, 1865, executed to the complainant a deed, at which time 500 dollars of the purchase money was paid, and the complainant, jointly with the defendant *Edwards,* executed their five bonds for the remainder of the purchase money, respectively for the following sums: one for 1,000 dollars, payable thirty days after date; one for the sum of 1,500 dollars, payable sixty days after date; one for the sum of 2,000 dollars, payable ninety days after date; one for the sum of 6,500 dollars, payable six months after date, and one for the sum of 6,500 dollars, payable twelve months after date; and to secure the payment of said bonds the complainant executed to *Gillison* a trust deed upon said land; since which time the complainant paid the three bonds first falling due. That the defendant, *Chilton,* at the time of the purchase, represented that the several tracts of land contained 500 acres, but that by subsequent survey the whole of said tracts contain only 453 acres. That one of the tracts of land conveyed to complainant, lying on the north side of Elk river, containing 107 acres, the defendant, *Chilton,* had title to but three undivided fifth parts thereof, and after deducting the two-fifths thereof owned by persons unknown to complainant, there would be left but a little over 400 acres actually conveyed by defendant, *Chilton,* to complainant. That the defendant, *John C. Bird,* in October, 1855, purchased at sheriff's sale for taxes, a large tract of land in *Kanawha* county, and in May, 1858, obtained from the clerk of the county court of said county a deed for the same, which was then recorded in said county, and that said tract of land, so purchased by and conveyed to *Bird,* embraced and covered all the various tracts conveyed or pretended to be conveyed by *Chilton* to complainant, excepting 125 acres at the mouth of Big Sandy creek, to which only *Chilton* had title, and that all the residue of the land sold and conveyed by *Chilton* to complainant was held adversely to complainant. That the defendant, *Gillison,* the trustee, had

advertised the land for sale to enforce the payment of the last two bonds of 6,500 dollars each, and the bill prayed that *Gillison*, the trustee, be restrained, inhibited and enjoined from selling said land or taking any steps to enforce the execution of the deed of trust, and that the deed from *Chilton* to complainant, as also the contract between them for the purchase of said land be set aside and declared null and void, and that *Chilton* be required to deliver up to complainant the two bonds of 6,500 dollars each, and also to refund to him the 5,000 dollars paid on said land. An injunction was granted. The defendants, *William E. Chilton*, *William H. Edwards*, and *Josiah Musgrave* filed three separate answers to the bill. The answer of respondent, *Chilton*, denied that he intended to convey by said deed, or that it was either understood or agreed between him and the complainant, that respondent did convey or was to convey the precise quantity of 500 acres of land, or that the several tracts sold and conveyed by his deed to complainant did contain precisely that quantity; that pending the negotiations for the sale, and at the time the deed was made to complainant for the land, respondent told complainant that he had never had said land surveyed, and although his deeds called for about 500 acres, yet he was inclined to believe there was not more than 450 acres in the several tracts of land, and that as complainant was desirous that there should be no delay in the purchase, he (complainant) replied that inasmuch as respondent's deeds called for about 500 acres, and that the difference, if any should be found hereafter to exist, would be of no consequence, and should not be a matter of dispute or controversy between himself and respondent, and that the deed should call for 500 acres *more or less;* that as soon as complainant's bill was filed, although he considered that he had good title to the lands, yet that he might appear in court having done all that in equity and good conscience he could under any circumstances be required to do, he procured and had recorded deeds from *John C. Bird, James S. Connele,* and *David Polsley,* releasing all and any claims they may have had to any portion of the land sold by respondent to complainant.

Respondent denied that he conveyed the whole of the 107 acre tract, when in fact he had title to but three-fifths of said tract; that by reference to respondent's deed to complainant it would be seen that respondent only conveyed to complainant the three-fifths of said 107 acre tract, (which the deed does in fact show). The answer of respondent, *Chilton*, was supported by the testimony of *W. G. Gillison*, who proved that he was present when the negotiations for the lands in the bill mentioned were made between complainant and defendant, *Chilton;* that *Chilton* remarked that he had never had the lands surveyed, and that he was disposed to believe there was not more than 450 acres embraced within the several tracts, although the deeds called for more land. Complainant replied that the difference was of no consequence anyhow, and should cause no difference between himself and *Chilton.*

On the 11th day of July, 1866, the court below rendered a decree in the cause, dissolving the injunction, and at the same term, it was upon motion of complainant and upon his giving bond, suspended for 30 days to enable him to make application to this court for an appeal, which appeal was granted, to operate as a supersedeas, by one of the Judges of this court in vacation.

*Lee* and *Edmiston* for appellant.
*R. L. Berkshire* and *D. Polsley*, for appellee.

MAXWELL, J. The deed from Chilton to Lovell upon its face I think is for the tracts of land described in it without reference to the number of acres contained in them.

One of the purposes of the bill is for relief, on the ground that Chilton at the time of the sale misrepresented the number of acres contained in the several tracts. On this subject the bill charges that Chilton represented the quantity of land contained in the several tracts at 500 acres, while in fact they only contained, by actual survey, 453 acres. In response to this allegation Chilton answers that both during the negotiations pending the sale, at the time of the execu-

tion of the deed and subsequently, he told Lovell that he had never had said lands surveyed, and that although his several deeds called for about that amount of land, yet that he was inclined to believe there was not more than 450 acres actually embraced in the several tracts.

Not wishing to rest on his denial of the allegation in the bill, which was responsive to it, he proceeded to take the deposition of the witness, Gillison, who proves that in a conversation between Chilton and Lovell before the deed was executed, Chilton remarked that he had never had his lands surveyed, but that he was disposed to believe there was not more than 450 acres embraced within the several tracts, although the deeds called for more land. To which Lovell replied in substance, that as he made by his calculation about 500 acres, called for by the several deeds, to put it at that amount; that the difference was of no consequence, and should cause no difference between himself and Chilton.

I think this effectually disposes of the question as to the misrepresentation of the quantity contained in the several tracts. There is no other allegation in the bill of fraud, surprise or mistake.

The next ground for relief set up in the bill is that the title to a portion of the land conveyed was defective; that the title to the tract containing 107 acres is defective because Chilton had title to but three undivided fifth parts thereof. To this allegation Chilton makes the general answer, that he verily believes, and so alleges, that he has good and indefeasible title to said land. By reference to the deed from Chilton to Lovell it appears that only three undivided fifth parts of this tract are conveyed.

The bill further alleges that one John C. Bird had purchased at sheriff's sale and has title to a tract of 800 acres of land, which covers all the land conveyed by Chilton to Lovell except the 125 acre tract, and the complainant filed with his bill a deed from the clerk of the county court of Kanawha county to sustain the allegation of his bill. To this allegation, Chilton, in addition to the general answer before referred to, answers that although he considers that

he has good title to said lands, yet in order that he might appear in court having done all that in equity and good conscience he could under any circumstances be required to do, he, as soon as the bill was filed, proceeded to get and have recorded from the said Bird a deed releasing all his claims, a copy of which deed he files with his answer.

It appears from the deed to Bird that the title conveyed to him by his tax deed was the title of the heirs of William Cobb to a tract of 800 acres of land. It appears from the deeds filed by Chilton, that he purchased several of the tracts of land, if not all of them, after the sale was made to Bird by the sheriff, and it also appears that several of the tracts are parcels of the William Cobb tract.

It seems to me, therefore, that the complainant thus made out a case showing clearly that Chilton's title was defective, and was entitled to have the sale of the land injoined until the title could be settled. *Keytons* vs. *Browfords*, 5 Leigh, 39. *Ralston, &c.,* vs. *Miller, &c.,* 3 Rand., 44. But I think the release of Bird of all his title to said land, which Chilton procured and had recorded, was a sufficient settlement of the title to allow the complainant to proceed to collect the purchase money by sale of the land.

There is another charge in the bill that the complainant was informed and believed that there were other parties who claimed the land described in Chilton's deed to him, adversely to him, but there is no allegation who the parties are nor is their title shown or indicated. This allegation is entirely too general to require any attention.

I think, therefore, that the order dissolving the injunction was right, and that it ought to be affirmed, with costs and damages to the appellee, and the cause remanded to be further proceeded with, but if the case is when finally disposed of, the same as in the record here, the complainant ought to recover his costs.

The President concurred.

DECREE AFFIRMED.